## Breuer v. Dowden.

(Decided January 27, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas, Third Division).

1. Parent and Child—Liability of Parent for Debts of Adult Child Stated.—Parent is not liable for debts of his adult child in absence of statute, unless child is incapable of supporting himself, and incapacity arising after attaining able majority is not enough to subject parent to such liability; but if child at time of attaining majority is incapacitated to earn living for himself, and is at that time living in parent's home as member of household, parent is liable for necessaries furnished him.

2. Parent and Child—Father's Liability for Debts of Adult Daughter Held to Terminate on Her Arrival at Age of 21 Years.—Father's liability for debts of his adult daughter, even for necessaries, terminated on her arrival at the age of 21 years, in absence of evidence that she was then incapacitated to earn her own living, and having once terminated could not be revived even though she afterwards became incapacitated while continuing as member of his household.

3. Parent and Child—Evidence Held to Show that Medical Services Were Rendered to Daughter on Her Credit.—Evidence that physician was engaged by adult daughter without knowledge or consent of father, and that first bill for services was made out and forwarded to her, held to show that services were rendered to daughter upon her credit, and that credit was not extended to the father.

4. Husband and Wife—Wife Held to have no Authority as Husband's Agent to Engage Medical Services for Adult Daughter.—Wife had no authority as agent for her husband to engage a physician to perform services for her adult daughter, where wife was estranged from husband, though living in the same house, and he did not authorize her to engage physician, or consent for him to be so engaged, or promise to pay for the services.

ISAAC SHERMAN for appellant.

JOSEPH S. LAURENT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This appeal presents the question whether the parent is liable for necessaries furnished his adult daughter, living in his home as a member of the family, at a time she is sick and unable to earn her living. The evidence shows that Emily Breuer is the daughter of appellant and that she was living in the home with her father

and mother in Louisville as a member of the family when she engaged appellee, Dr. Dowden, to make a diagnosis of her physical ailments and to give her treatment therefor. She was at the time about twenty-three or twenty-four years of age but had never had employment or earned her living. She was under the care of the physician for about eight (8) months. Of this time she spent six weeks in a hospital away from her father's home. She was suffering from some nervous trouble, so she states, but she was not confined to her bed or room except while at the hospital and then for the purpose of treatment. At the time she gave her deposition in this case she had been married for some time, and was then twenty-six years of age, living with her husband in Atlanta. The evidence shows she and her father, appellant, were not on friendly terms, she never speaking to him except when it was absolutely necessary. Her mother was also estranged from her father, although they lived in the same house. There was little or no conversation between them.

The daughter and mother went to the doctor's office at the time his services were engaged. They gave a history of her case, but there was nothing said about who would pay the bill or the amount to be charged. In fact, nothing appears to indicate that the mother engaged the physician. The doctor never called on the daughter at the parental residence, and the father never knew of the employment of appellee, doctor, until long after most of the services had been rendered. He did not authorize or direct his daughter or wife to engage the physician or consent for him to be so engaged, or promise or agree, either directly or indirectly, to pay for the services. If the father is liable for the services of the physician it must be on the implied promise which the law raises against the father, to provide the members of the household, of which he is the head, with necessities, and which in some cases has been extended to adult children.

Appellee insists that the law imposes a duty on the parent to support his adult dependent child who has remained a member of the household because incapable of providing his own means of livelihood. In support of this proposition appellee cites the case of Crane v. Malone, 130 Ky. 125, where we said:

"The duty and obligation of a parent to care for his offspring does not necessarily terminate when

the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligations to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessaries.''

See also Overseers of the Poor of Alexandria v. Overseers of the Poor of Bethelehem (1835), 16 N. J. L. 119; Brown v. Ramsey, N. J. L. 117; Poor Overseers of Greeg Township v. Poor Overseers of New Berlin, 8 Cent. Rep. (Pa.) 528; Rowell v. Town of Vershire, 62 Vt. 405; 8 L. R. A. 708; Bailey v. Penick, 10 Ky. L. Rep. 239; Schultz v. Western Farm Tractor Co. (Wash. 1920), 190 Pac. 1007.

Appellee also insists that the wife, who went with the daughter to call on the physician at the time he was engaged and treatment was undertaken, was the agent of the husband and had power and authority to bind him for the services rendered her daughter on the theory as expressed in Mecham on Agency, section 162:

"When a man maintains a domestic establishment and places his wife in charge of it, she takes by implication, as domestic manager, the power to make those contracts and purchases respecting the conduct and maintenance of the household affairs which are naturally and ordinarily incident to the wife's management of such an establishment. Supplies for the house, domestic services, medical attendant, articles for the use of the wife and children, and the like, suitable to the style in which the husband lives and of the sort and amount which are ordinarily ordered by the wife under such circumstances, would fall within this rule."

We do not think the facts of this case bring it within the rule stated by Judge Mecham.

In the absence of statute, says 29 Cyc. 1612, a parent is under no legal obligation to support an adult child; but the legal liability for the support of the child ceases when it reaches the age of majority, unless the child is

in such a feeble and dependent condition physically or mentally as to be unable to support itself, and the parent's liability having once determined will not be restored by a subsequent change in the condition of the child.

In treating the same subject, 20 R. C. L., page 586, says:

"The general rules of the law of parent and child being based upon the child's incapacity, both natural and legal, and its consequent need of protection and care, apply only while the child is under the age of majority. . . . But where a child is of weak body and mind, unable to care for himself after coming of age, and remains unmarried, and living in the father's home, it has been held that the parental rights and duties remain practically unchanged. The father's duty to support the child continues as before."

In support of his contention that a parent is not legally liable for the debts of an adult daughter, appellant Bruer cites and relies upon Central Ky. Asylum v. Knighton, 113 Ky. 156; Crane v. Malone, *supra;* Commonwealth v. Willis' Ex., 7 R. 677; 29 Cyc, 1612, section 7; Muren v. Jackson, 54 Ill. 397; Haynes v. Waggoner, 25 Ind. 174; Mr. Pleasant, Over. Poor v. Wilcox, 2 Pa. Dixt. 628, which tend to sustain his claim.

From the texts and cases cited by the parties we deduce the rule to be that a parent is not liable for the debts of his adult child in the absence of a statute to the contrary, unless the child is in such a feeble and dependent condition physically or mentally as to be incapable of supporting himself; that if at the time the child becomes of age he is reasonably physically and mentally sound and fairly able, if willing, to make and earn his own support, the parent is not liable for his debts or obligations thereafter contracted even though he should later become sick or mentally unbalanced and therefore incapacitated to earn a livelihood. If, however, the child at the time of his arrival at the age of twenty-one is sick or otherwise incapacitated to earn a living for himself and is at the time living in the home of the parent as a member of the household, the parent is liable for necessaries furnished him.

In the case of Blackey v. Laba, 63 Iowa 22, 50 Am. Reports 724, the question was asked: "Is a father legally

liable to a physician for the latter's services in profes-
sionally treating the adult but unmarried daughter of
said father during her last illness, where the physician
was called by the daughter, she at the time living with
her father as a member of his family, that being her
home, the treatment being necessary and proper, and
rendered with the knowledge of the father, and without
any objection on the part of the latter to the physician?"
In answer to that question the court said: "The fact that
the adult child is a member of the family of the father
does not render him liable for necessaries furnished upon
request of the child. The father as the head of the family
is not liable for necessaries furnished its members, other
than the wife and minor children. Servants, lodgers and
boarders are members of the family, as well as others
who are subject to the authority of its head. See Web-
ster's Dictionary. But for necessaries furnished none
of them is the father liable. An adult son or daughter
whose home is with the father is of this class of per-
sons."

That was a stronger case for the doctor than the
case now before us in that he performed the services at
the home of the parent with the parent's knowledge and
consent. Notwithstanding these facts the court denied
the physician a recovery.

If it appeared from the evidence in this case that
the adult daughter of appellant who lived in the home
as a member of the family was actually physically or
mentally incapacitated to earn her own livelihood, not
merely unemployed, or did not have an occupation, or
calling, at the time she arrived at her majority, and this
disability continued until the employment of appellee
physician, we think his cause would be sustainable, but
in the absence of such a showing we must hold that the
father's liability for the debts of his adult daughter, even
for necessities, terminated on her arrival at the age of
twenty-one years; and having once terminated cannot
be revived even though she became sick and incapacitated
while continuing as a member of his household.

It must not be overlooked that the physician was en-
gaged by the daughter without the knowledge or consent
of the father and that the first bill he rendered for ser-
vices was made out and forwarded to her. When re-
ceived by the daughter she immediately, without consult-
ing the father, called at the physician's office and told
him that she had nothing with which to pay him and that

she expected her father to pay the bill for her. Thereupon the physician mailed the bill to the father and requested payment. These facts make it certain that the services were rendered to the daughter upon her credit, and that credit was not extended to the father.

We are also of opinion that the mother had no authority as agent of the father, under the facts of this case, to engage the physician to perform services for her adult daughter, if indeed she did attempt to make such engagement.

For the reasons indicated the appeal is granted and judgment reversed for proceedings not inconsistent herewith. Whole court sitting and concurring.

Judgment reversed.